IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VIRGINIA GIMBEL McLUCAS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-735 |
| JPMORGAN CHASE BANK, N.A., | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss (ECF No. 8), and self-represented Plaintiff Virginia Gimbel McLucas's Motion for Leave to File a Surreply (ECF No. 13). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant both Motions.

### I.  BACKGROUND

On January 21, 2020, McLucas purchased a cashier's check for $200,000 ("Check 1"), payable to herself, from PNC Bank ("PNC"). (Compl. ¶ 1, ECF No. 4). That same day, she deposited Check 1 into a checking account at Chase. (Id. ¶ 8). Chase made the funds available to her the following day on January 22, 2020. (Id. ¶ 15). Also on January 22, 2020, McLucas purchased a second cashier's check for $200,000, this time from Chase ("Check 2"). (Id. ¶ 16). Check 2's terms stated that "[s]top payment can only be placed if the cashier's check is lost, stolen or destroyed." (Id. ¶ 17). McLucas then deposited Check 2 into a checking account at Wells Fargo Bank ("Wells Fargo"). (Id. ¶ 23).

On January 24, 2020, Wells Fargo told McLucas that Chase had submitted a letter of indemnification ("LOI") requesting the return of the proceeds from Check 2, and that Wells Fargo had placed a hold on her account as a result. (Id. ¶¶ 28, 38, 52). On January 27, 2020, a Chase employee told McLucas that the reason for its LOI was that PNC "had returned [Check 1] stamped 'NOT AUTHORIZED,'" and that "a claim like that usually involves fraud." (Id. ¶ 30). The employee further said that Chase would investigate and have a resolution by January 31, 2020. (Id.).

On January 28, 2020, McLucas emailed Chase to "formally object to the unauthorized handling of funds in [her] account" and accused Chase of "violat[ing] banking regulations by not only putting a stop payment on [its] own cashiers check, but by also honoring the stop payment placed on the original deposit, a cashier's check from PNC [B]ank in the amount of $200,000, after a final payment occurred." (Id. ¶ 32).

On January 29, 2020, McLucas received a notice from Chase dated January 23, 2020, which stated that Check 1 was returned unpaid because it was not authorized and could not be deposited. (Id. ¶ 34). Further, McLucas was charged with a withdrawal for the value of Check 1, $200,000, and assessed a fee of $12.00 for overdrawing the account. (Id. ¶ 37). Chase returned the funds from Check 1 to PNC. (Id. ¶ 40).

On January 31, 2020, a Wells Fargo employee told McLucas that "Chase let its LOI expire and Wells [Fargo] removed the hold on the funds." (Id. ¶ 52). McLucas then arranged for Wells Fargo to wire the money in the account to herself, but Wells Fargo did not complete the wire transfer, and instead sent the money to Chase. (Id. ¶¶ 54, 57). Wells Fargo later admitted it returned the funds to Chase in error. (Id. ¶ 68).

On February 1, 2020, a Chase employee informed McLucas that "there was nothing Chase could or would do to get the [Check 1] money back from PNC." (Id. ¶ 58). As to Check 2, the employee said Chase had the right to stop cashier's checks at any time and had done so in that instance because of PNC's claim that Check 1 was unauthorized. (Id. ¶ 61). The Chase employee further explained that Chase "'was out the money' because it had paid its own cashier's check [Check 2] to Wells [Fargo] and elected to return the credit to PNC for its cashier's check [Check 1]." (Id.). A different Chase employee denied receipt of the funds from Wells Fargo for Check 2. (Id. ¶ 69).

On March 5, 2020, Chase suddenly credited McLucas's account for the funds received from Wells Fargo, credited her for the $12 overdraft fee, and closed her account with a $0 balance. (Id. ¶ 71). She alleges that these events, and Chase's actions, deprived her of $200,000 that she needed to care for her father. (Id. ¶¶ 88, 106).

McLucas filed her Complaint against Chase[1] on January 30, 2023, in the Circuit Court for Baltimore City. (ECF No. 4). Chase removed the case to this Court on March 17, 2023, on the basis of diversity jurisdiction. (Notice of Removal 2–3, ECF No. 1). McLucas makes the following claims: (1) negligence (Count I); (2) "unlawful trade practices"[2]

---

[1] She has filed separate lawsuits against Wells Fargo and PNC. (GLR-23-725 and GLR-23-726). In both of those suits, the parties agreed to resolve the matter in private arbitration. (McLucas v. Wells Fargo Bank, N.A., GLR-23-725, ECF No. 13; McLucas v. PNC Bank, N.A., GLR-23-726, ECF No. 35).

[2] There is no standalone cause of action for "unlawful trade practices," and it appears that this claim overlaps with the Maryland Consumer Protection Act ("MCPA") claim (Count IV) because it cites MCPA § 13-301. (Compl. ¶ 126). Accordingly, the Court will analyze McLucas's MCPA claim under Count IV and dismiss Count II for failure to state a claim.

3

(Count II); conversion (Count III); violation of the Maryland Consumer Protection Act ("MCPA") (Count IV); and violation of the Maryland Consumer Debt Collection Act ("MCDCA") (Count V). (Compl. ¶¶ 113–194). She seeks damages. (Id. at 47). Chase filed the instant Motion to Dismiss, (ECF No. 8), on March 24, 2023. McLucas opposed the Motion on April 20, 2023, (ECF No. 10), and Chase replied on May 4, 2023, (ECF No. 11). McLucas also filed a Motion for Leave to File Surreply[3] on May 11, 2023, (ECF No. 13), and Chase filed an opposition on May 24, 2023, (ECF No. 14).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[3] Though surreplies are generally not permitted, see Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. See Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). However, courts have also used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief. See Williams v. Bartee, No. CCB-10-935, 2011 WL 2842367, at *2 (D.Md. July 14, 2011) (permitting pro se party to file surreply that does not address new material but also does not "unduly prejudice defendants"), aff'd sub nom. Williams v. Merritt, 469 F.App'x 270 (4th Cir. 2012).

Although Chase did not raise new arguments in its Reply, the Court will grant McLucas's Motion for Leave to File Surreply due to her pro se status and because her proposed Surreply contains brief, reasonable arguments to address the issues raised by Chase. Further, the Court finds that because the arguments contained in her Surreply do not change the outcome of its analysis below, Chase will not be unduly prejudiced by them. Accordingly, the Court grants McLucas's Motion (ECF No. 13) and considers her Surreply below.

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Johnson v. Silver, 742 F.2d 823, 825 (4th Cir. 1984). But the court need not accept unsupported or conclusory factual allegations devoid of any

reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.      Analysis**

Chase argues that McLucas's claims must be dismissed because: (1) they are time barred; (2) the tort claims (Counts I and III) are preempted by the Maryland Uniform Commercial Code ("UCC"); and (3) she has failed to state a claim for violation of the MCPA or the MCDCA.[4] (Mem. L. Supp. Mot. Dismiss ["Mot. Dismiss"] at 1–2, ECF No. 8-1). The Court will address each of these arguments below.

**1.      Statute of Limitations**

Chase argues that McLucas's claims must be dismissed as untimely because of Maryland's three-year statute of limitations for negligence, conversion, the MCPA and the MCDCA. (Id. at 4–5). According to Chase, the crux of the Complaint is that Chase acted tortiously and in violation of Maryland law when it honored the stop payment issued by PNC on Check 1, and when it issued a stop payment on Check 2. (Id.). Chase argues that because these events occurred no later than January 24, 2020, McLucas filed the Complaint outside of the three-year limitations period on January 30, 2023. (Id.). McLucas responds

---

[4] Chase also argues that the MCPA and MCDCA claims must be dismissed because McLucas did not attempt to rebut Chase's arguments concerning these claims in her Opposition. (Reply at 4, ECF No. 11). Indeed, it is well established law that a plaintiff abandons a claim if the defendant moves to dismiss it and she does not make a contrary argument opposing the dispositive motion. See Ferdinand-Davenport v. Children's Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (plaintiff abandoned her discriminatory discharge claim when she failed to respond to defendant's argument in her opposition to the motion to dismiss). Accordingly, the MCPA and MCDCA claims (Counts IV and V) will be dismissed, although the Court also finds that even if McLucas had not abandoned these claims, she would still fail to state a claim for the reasons set forth below.

that the three-year bar does not apply to her claims, and that even if it did, the limitations period did not start running until January 31, 2020, when Chase "actually converted or seized her monies" when it received the Check 2 funds from Wells Fargo and did not return them to McLucas. (Opp'n Mot. Dismiss ["Opp'n"] at 13–14, ECF No. 10).[5]

As a preliminary matter, the Court finds that a three-year statute of limitations applies to McLucas's claims. She first makes tort claims for negligence and conversion. Maryland, under its choice of law rules, applies the law of the state where the tort or wrong was committed. Lewis v. Waletzky, 576 F.Supp.2d 732, 735 (D.Md. 2008), aff'd, 475 F.App'x 906 (4th Cir. 2012). In the instant case, the torts allegedly occurred in Maryland, and Maryland requires tort claims to be filed within three years from the date they accrue. See Md. Code Ann., Cts. & Jud. Proc. § 5–101. This three-year bar also applies to MCPA and MCDCA claims. Fontell v. Hassett, 870 F.Supp.2d 395, 415 (D.Md. 2012) (applying § 5–101's three-year limitations period to MCPA and MCDCA claims). McLucas argues that the limitations period does not apply "given the facts of this matter," but she cites no authority to support her argument. (Opp'n at 13–14).

Next, the Court must determine whether McLucas's claims are barred by the statute of limitations. First, regarding the claims for negligence and conversion (Counts I and III), McLucas has adequately alleged that Chase was negligent and converted her funds not just through its actions in handling her account and the Checks between January 22, 2020 and January 24, 2020, but also when it received McLucas's funds from Wells Fargo on January

---

[5] Citations to the Opposition's page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

31, 2020, and did not return them to her. Under the doctrine of continuing harm, "every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." Chevron U.S.A. Inc. v. Apex Oil Co., Inc., 113 F.Supp.3d 807, 820 (D.Md. 2015). Thus, "violations that are continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time." Id. In this instant case, McLucas has alleged that Chase was negligent and converted her funds on January 31, 2020, in addition to earlier tortious conduct, and therefore her Complaint is timely as to those claims.

Similarly, her MCPA and MCDCA claims (Counts IV and V) are also timely. The MCPA claim is based upon Chase's alleged false representations to McLucas regarding the handling of her funds and the Checks. (See Compl. ¶ 163). Chase allegedly made such representations on February 1, 2020, (id. ¶ 58), so her January 30, 2023, Complaint was timely as to that claim. As for the MCDCA claim, McLucas alleges that Chase wrongfully sought to collect a debt from her, and that it did collect the debt on January 31, 2020. (See Compl. ¶ 183). Accordingly, this claim is also timely, and the Motion to Dismiss will not be granted on this basis.

    **2.    UCC Preemption**

Next, Chase argues that the negligence and conversion claims (Counts I and III) are preempted by the UCC. (Mot. Dismiss at 5). McLucas argues that her claims are not preempted because they are "more of hybrid form of claim which, though initially starting as a transaction that might be covered by the UCC, [] went beyond the applicability of that

code" because of Chase's alleged "clawing back" of the Check 2 money. (Opp'n at 13–14). At bottom, the Court agrees with Chase and will dismiss Counts I and III.

The UCC was designed to simplify laws governing commercial transactions and ensure uniformity among different jurisdictions. Texas Star Nut & Food Co., Inc. v. Truist Bank, 632 F.Supp.3d 664, 669 (D.Md. 2022). Thus, "when the Code and common law both provide a means of recovery, the Code should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the [UCC]." Id. Courts in the Fourth Circuit have held that common law tort claims relating to negotiable instruments, like cashier's checks, are preempted by the UCC because the code provides adequate recovery in Titles 3 and 4. See Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A., No. 21-1893, 2022 WL 3334626, at *1 (4th Cir. Aug. 12, 2022) (finding that negligence claim related to wire transfer was preempted by the UCC); Mahabare v. SunTrust Bank, 573 F.Supp.3d 1006, 1012 (D.Md. 2021) (dismissing negligence claim because "Titles 3 and 4 of the Maryland UCC provide a comprehensive statutory scheme for the rights and remedies concerning negotiable instruments and bank deposits and collections, respectively"); Silver v. Wells Fargo Bank, N.A., No. MJG-16-382, 2017 WL 3621235, at *3 (D.Md. Aug. 23, 2017) (dismissing negligence claims as preempted by the UCC); Advance Dental Care, Inc. v. SunTrust Bank, 816 F.Supp.2d 268, 271 (D.Md. 2011) (dismissing conversion claim because UCC § 3-420 preempted it).

In the instant case, the claims for negligence and conversions are preempted by UCC § 3-411 and § 3-412, which provide remedies for refusal to pay a cashier's check and

stopping payment on cashier's checks. See Md. Code Ann., Comm. L. §§ 3-411, 3-412. McLucas does not cite any authority to support her argument that her claims are "hybrid" and not fully preempted by the UCC. Accordingly, the tort claims in Counts I and III will be dismissed.

### 3.   The MCPA Claim

In Count IV, McLucas alleges a violation of the MCPA due to Chase's "unfair or deceptive trade practice[s]." (Compl. ¶ 155). Specifically, McLucas alleges that Chase violated the MCPA § 13-301 by "refusing to honor a valid cashier's check," "asserting improper dominion and control" over McLucas's funds, and misleading her as to her right to those funds. (Id. ¶ 163). Chase argues that her MCPA claim fails to state a claim because this conduct does not fall within the MCPA's scope. (See Mot. Dismiss at 8–9). The Court agrees with Chase.

The MCPA prohibits unfair, abusive, or deceptive trade practices in the context of the sale of goods, realty, or consumer services, as well as the extension of consumer credit or the collection of consumer debts. See Md. Code Ann., Comm. L. § 13-303. McLucas does not identify, and the Court could not locate, any authority applying the MCPA to bank accounts or to negotiable instruments like a cashier's check. Rather, Chase's alleged conduct in managing accounts and checks is governed by the UCC as explained above. Accordingly, the MCPA claim will be dismissed.

### 4.   The MCDCA Claim

In Count V, McLucas alleges that Chase violated the MCDCA because it issued a LOI to Wells Fargo and took the funds from Check 2 to relieve the alleged overdraft of her

account. (Compl. ¶ 183). Chase argues that the MCDCA claim must be dismissed for failure to state a claim because McLucas has not alleged that Chase collected, or attempted to collect, a debt from her. (Mot. Dismiss at 9). Again, the Court agrees with Chase.

The MCDCA governs debt collectors' conduct, and it generally prohibits debt collection by coercion, threats, or harassment, as well as debt collection when the collector knows that no debt is owed. Md. Code Ann., Comm. L. § 14-202. Here, McLucas has failed to allege that Chase collected or attempted to collect a debt from her. Although Chase informed McLucas that she overdrafted her account and assessed her a $12 fee, (Compl. ¶¶ 37, 69), Chase did not try to collect the funds from McLucas. Instead, Chase received the funds back from Wells Fargo, applied them to her account, credited the $12 fee, and closed the account with a $0 balance. (Id. ¶ 76). McLucas does not identify any authority to support her theory that an overdraft notification constitutes an attempt to collect a debt under the MCDCA. Accordingly, because the Complaint is devoid of allegations that Chase collected, or tried to collect, a debt from McLucas, Count V will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss, (ECF No. 8), and dismiss the Complaint, (ECF No. 4). The Motion for Leave to File a Surreply, (ECF No. 13), will also be granted. A separate Order follows.

Entered this 19th day of March, 2024.

/s/
George L. Russell, III
United States District Judge